DAVID L. HENKIN          #6876
ELENA L. BRYANT         #9548
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone No.: (808) 599-2436
Email:  dhenkin@earthjustice.org
        ebryant@earthjustice.org

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| HUI MĀLAMA HONOKŌHAU, an unincorporated association,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF HAWAIʻI,<br><br>    Defendant. | Civil No. 23-00393<br><br>PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; EXHIBIT A |

PLAINTIFF'S COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

1. Defendant County of Hawaiʻi ("Defendant") has been violating, and continues to violate, the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, by continuously discharging treated sewage from the Kealakehe Wastewater Treatment Plant ("Kealakehe WWTP") into the Pacific Ocean—a water of the United States—via groundwater without the required National Pollutant Discharge Elimination System ("NPDES") permit.

2. Plaintiff Hui Mālama Honokōhau (the "Hui") is informed and believes, and on that basis alleges, that the Kealakehe WWTP, which Defendant owns and operates, currently discharges about 1.7 million gallons per day of treated sewage from two pipes into a natural, disposal pit located in a permeable lava field upslope from Honokōhau Harbor, which is on the Kona (west) side of Hawaiʻi Island. The treated sewage that Defendant discharges into the natural disposal pit enters the groundwater and flows into the nearshore ocean waters in and adjacent to the Honokōhau Boat Harbor, including Honokōhau Bay.

3. Defendant's discharges from the Kealakehe WWTP into the Pacific Ocean via groundwater began in 1993 and will continue into the future on an ongoing basis.

4. The treated sewage that the Kealakehe WWTP discharges into waters of the United States contains, among other contaminants, nutrients (including but not limited to nitrogen and phosphorous), metals, and endocrine-disrupting compounds.

5. Polluted discharges from the Kealakehe WWTP have had detrimental effects on, and pose an ongoing threat to, the water quality and health of the nearshore ocean waters and ecosystems in and adjacent to the Honokōhau Boat Harbor.

6. The Hui is informed and believes, and on that basis alleges, that Defendant has plans to increase the volume of wastewater that the facility treats and discharges, so discharges from the Kealakehe WWTP into the Pacific Ocean will only increase in the future.

7. The CWA's NPDES program regulates discharges of pollutants from "point sources" like pipes into waters of the United States via groundwater that are "the functional equivalent of a direct discharge from the point source into navigable waters." *Cnty. of Maui v. Hawai'i Wildlife Fund*, 140 S. Ct. 1462, 1477 (2020); *see* 33 U.S.C. § 1342; 40 C.F.R. pt. 122.

8. Defendant does not have an NPDES permit that authorizes and regulates the Kealakehe WWTP's discharges into the Pacific Ocean. Defendant, therefore, is in violation of the CWA. 33 U.S.C. § 1311(a).

9. By this complaint, the Hui seeks a declaratory judgment that Defendant has been and will continue to violate the CWA unless and until Defendant obtains and complies with the terms of a valid NPDES permit for discharges from the Kealakehe WWTP into the Pacific Ocean. The Hui seeks an injunction requiring Defendant promptly to obtain and comply with the terms of an NPDES permit to eliminate ongoing illegal discharges. The Hui also seeks imposition of civil penalties for Defendant's violations of the CWA.

## JURISDICTION AND VENUE

10. The Hui brings this lawsuit pursuant to the CWA, 33 U.S.C. §§ 1251 *et seq*. This Court has subject matter jurisdiction over the claims for relief set forth herein pursuant to 33 U.S.C. § 1365(a) (citizen suits to enforce effluent standards or limitations under the CWA), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy).

11. On May 24, 2023, the Hui mailed written notice of the violations set forth in this complaint, and of the Hui's intent to file suit on these CWA claims, to the U.S. Environmental Protection Agency ("EPA") Administrator, EPA Region 9 Administrator, the Director of the State of Hawai'i Department of Health ("DOH"), the Mayor of the County of Hawai'i, the Director of the County of Hawai'i Department of Public Works, and the Director of the County of Hawai'i

3

Department of Environmental Management. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(2). The Hui's notice letter and certified mail return receipts are attached hereto as "Exhibit A."

12. At least sixty days have elapsed since the Hui served notice of its intent to sue. *See* Exhibit A. Neither the EPA nor DOH has commenced or is diligently prosecuting a civil or criminal action in a court of the United States or a state to require Defendant to obtain an NPDES permit or otherwise address the violations the Hui alleges in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

13. Defendant has failed to obtain and comply with the terms of an NPDES permit for the discharges of treated sewage from the Kealakehe WWTP into waters of the United States, and these CWA violations will continue unless and until Defendant obtains an NPDES permit and complies with permit limits designed to protect water quality.

14. Venue properly lies in this judicial district under CWA section 505(c)(1), 33 U.S.C. § 1365(c)(1), because the source of the violations at issue is located within this judicial district.

## PARTIES

A. <u>Plaintiff</u>

15. Hui Mālama Honokōhau is a community-based, nonprofit association established by West Hawaiʻi residents, including Native Hawaiian fishers and

cultural practitioners, to protect Honokōhau's coastal waters, reef ecosystems, and aquatic life from pollution, and to protect human health.

16. Hui members live, work, recreate, and practice their culture in and around Honokōhau, and extensively use the waters in and adjacent to Honokōhau Harbor for subsistence fishing to feed their families, as well as for cultural, recreational, and aesthetic purposes. A healthy nearshore ocean environment and good water quality are essential for Hui members to participate in these activities.

17. Hui members use the Honokōhau Harbor and adjacent waters to fish for papio (trevally), akule and halalū (adult and juvenile bigeye scad), ʻōʻio (bonefish), and other fish caught for subsistence purposes. Hui members also utilize the Honokōhau Harbor and adjacent waters to gather limu (seaweed), ʻopihi (limpets), and hāʻukeʻuke (sea urchin), and to catch ʻaʻama crab and heʻe (octopus). Hui members are concerned about the degraded water quality of the Honokōhau Harbor and adjacent waters and have grown increasingly concerned about the contaminants in the water and in the fish, shellfish, and limu that they gather to feed their families. As a result, since becoming aware of the significant pollution issues in Honokōhau Harbor in 2017, Hui members have avoided fishing in the Honokōhau Harbor area, but they would like to resume subsistence fishing in the harbor area and would do so regularly if the water quality improves.

18. Hui members also use the Honokōhau Harbor and adjacent waters for cultural purposes. One ʻohana (family) that are members of the Hui are kahu manō, or caretakers of the sharks that frequent the waters adjacent to the Honokōhau Harbor and are ʻaumākua (ancestral deities) of families from Hawaiʻi Island. This ʻohana has intimate knowledge of the manō (sharks) that visit the Honokōhau area and have a kuleana (responsibility) to protect and care for the manō. In order to do so, they conduct cultural practices, such as pule (prayer), hoʻokupu (offering), and kilo (observation), in the waters adjacent to the Honokōhau Harbor. Clean water, free of pollution, is crucial to their kuleana to care for the manō and to conduct their cultural practices.

19. Hui members also extensively use the Honokōhau Harbor and adjacent waters for recreational purposes. Hui members enter the Honokōhau Harbor waters to launch their boats and canoes. They also enter the harbor waters and the ocean adjacent to the Honokōhau Harbor to swim, dive, snorkel, scuba dive, and paddle. Hui members are concerned about contracting infections and water-borne illnesses, such as *Escherichia coli* (E. coli), by entering the harbor waters due to Defendant's continuous discharge of wastewater into Honokōhau Harbor. Hui members have contracted staph infections—in some instances methicillin-resistant *Staphylococcus aureus* infections—after entering the harbor

6

and adjacent waters, and Hui members are concerned that the Kealakehe WWTP's discharges of treated sewage are the culprit.

20.   Hui members also utilize the Harbor and adjacent marine waters for aesthetic purposes.  Given the rich marine environment in the waters surrounding Honokōhau Harbor, Hui members enjoy using the location to view nature—including dolphins, sea turtles, and humpback whales that frequent the harbor area—from both inside and outside the harbor waters.  Algae blooms, which result from excess nutrient inputs, often cause the harbor and adjacent waters to turn a brown, murky color, making it difficult to observe marine life.  Defendant's discharge of nutrient-laden wastewater greatly impacts Hui members' aesthetic interests in viewing the harbor waters in their natural state and the ability to view the rich marine life in the Honokōhau Harbor and adjacent waters.

21.   Defendant's operation of the Kealakehe WWTP in violation of the CWA and the resulting pollution in the harbor and surrounding waters have adversely affected and continue to adversely affect the subsistence, cultural, recreational, aesthetic, and public health interests of the Hui.  Unless the relief requested herein is granted, the Hui will continue to be irreparably injured by Defendant's illegal discharges, as detailed below.  The Hui brings this action on behalf of itself and its adversely affected members.

B. <u>Defendant</u>

22. Defendant County of Hawaiʻi is the owner and operator of the Kealakehe WWTP. Defendant has owned and operated the Kealakehe WWTP at all times that the violations alleged in this complaint have taken place.

23. The Hui is informed and believes, and on the basis thereof alleges, that Defendant is discharging pollutants to navigable waters without an NPDES permit in violation of the CWA. 33 U.S.C. § 1311(a).

STATUTORY FRAMEWORK:<br>THE CLEAN WATER ACT

A. <u>The Clean Water Act's Prohibition on Unpermitted Discharges</u>

24. In 1972, Congress enacted the Federal Water Pollution Control Act, known as the Clean Water Act, to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this central goal, section 301(a) of the CWA prohibits "the discharge of any pollutant" into the nation's waters without an appropriate permit. *Id.* § 1311(a).

25. The CWA defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12). The Act, therefore, prohibits the (1) discharge (2) of any pollutant (3) to navigable waters (4) from a point source (5) without an NPDES permit. *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*, 13 F.3d 305, 309 (9th Cir. 1993).

26. The CWA defines the term "pollutant" broadly to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

27. The CWA defines "navigable waters" to include "waters of the United States, including the territorial seas." *Id.* § 1362(7).

28. The CWA defines "territorial seas" as "the belt of the seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters, and extending seaward a distance of three miles." *Id.* § 1362(8).

29. The CWA defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, . . . channel, tunnel, conduit, well, [or] discrete fissure . . . from which pollutants are or may be discharged." *Id.* § 1362(14).

30. The U.S. Supreme Court in *County of Maui* held that a discharge of "pollutants that reach navigable waters after traveling through groundwater" is "from a point source," within the meaning of the CWA, "if that discharge is the functional equivalent of a direct discharge from the point source into navigable waters." 140 S. Ct. at 1477. While many factors might be relevant to the

9

"functional equivalence" determination, the Supreme Court identified the distance pollution travels from the point source to the receiving surface waterbody and the transit time as being determinative in most cases. *Id.* at 1476-77; *see also Hawai'i Wildlife Fund v. Cnty. of Maui*, 550 F. Supp. 3d 871, 885 (D. Haw. 2021).

      31.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), authorizes the issuance of NPDES permits to allow persons to discharge limited quantities of pollutants into surface waters from point sources, where appropriate. The NPDES program is designed to protect the quality of surface waters. Without an NPDES permit, the CWA imposes strict liability for any point-source discharge that adds pollutants to waters of the United States irrespective of whether that discharge affects the receiving water, with dischargers subject to enforcement action and civil penalties. *Id.* §§ 1311(a), 1319; 40 C.F.R. § 19.4; *Hawai'i Wildlife Fund v. Cnty. of Maui*, 24 F. Supp. 3d 980, 997 (D. Haw. 2014), *aff'd* 886 F.3d 737 (9th Cir. 2018), *vacated and remanded on other grounds sub nom*, *Cnty. of Maui v. Hawai'i Wildlife Fund*, 140 S. Ct. 1462 (2020).

     B.     <u>NPDES Permits Further the CWA's Goal to Protect Our Nation's Waters.</u>

      32.     CWA section 402(b), 33 U.S.C. § 1342(b), gives the EPA Administrator authority to allow a state to administer its own NPDES program. In the State of Hawai'i, the EPA has delegated authority to DOH, through the Director of Health, to issue NPDES permits. 39 Fed. Reg. 43,759 (Dec. 18, 1974);

*see also* Haw. Rev. Stat. § 342D-50; Haw. Admin. R. § 11-55-15.  A state-issued NPDES permit can impose effluent limits and other provisions that are more stringent than the federal requirements for an NPDES permit, but all provisions must be at least as stringent as the federal requirements.  40 C.F.R. § 123.25(a); Haw. Admin. R. § 11-55-02(c).

33. Federal or state agencies administering the NPDES program are required to ensure compliance with a variety of CWA provisions—including state water quality standards, which incorporate waterbody use classifications, water quality criteria, and anti-degradation requirements—and ultimately determine whether a discharge permit will be issued and, if so, the quantities of pollutants permitted in that discharge.  *See, e.g.*, 40 C.F.R. pts. 122, 123; Haw. Admin. R. ch. 11-55.

34. The CWA requires that waters in each state be assigned use classifications that determine the types of uses a particular waterbody should be able to support.  40 C.F.R. § 131.10.  Classifications of water bodies must take into account uses such as "recreation in and on the water" and "protection and propagation of fish, shellfish and wildlife," among others.  *Id.* § 131.10(a).  Administrative rules determine the use classifications of water bodies in Hawai'i, including those for marine waters.  Haw. Admin. R. §§ 11-54-2 (classification of state waters), 11-54-3 (classification of water uses).

11

35.     Along with establishing use classifications, states establish water quality criteria designed to protect the designated uses assigned to a particular body of water. 40 C.F.R. § 131.11(a). The criteria can be either narrative, which describe qualitative conditions, or numeric, which set quantitative limits for certain pollutants. *Id.* § 131.11(b).

    C.    <u>Water Pollution Regulations for Honokōhau Harbor and Adjacent Waters</u>

36.     DOH, the state agency charged with setting state water quality standards, has classified the Honokōhau Boat Harbor as a Class A embayment. Haw. Admin. R. § 11-54-6(a)(2)(B) & app. C. State policy for Class A waters is to protect "their use for recreational purposes and aesthetic enjoyment." *Id.* § 11-54-3(c)(2). Any other use must be "compatible with the protection and propagation of fish, shellfish, and wildlife, and with recreation in and on these waters." *Id.* Class A waters "shall not act as receiving waters for any discharge which has not received the best degree of treatment or control compatible with the criteria established for this class." *Id.* Hawai'i Administrative Rules § 11-54-6(a)(3) contains numeric water quality criteria that apply to Honokōhau Harbor, and establishes limits for a variety of pollutants including, but not limited to, nitrogen and phosphorus.

37.     DOH has classified the entire Kona Coast, which includes waters adjacent to Honokōhau Harbor, as Class AA open coastal waters. *Id.* § 11-54-

6(b)(2)(A) & app. D.  State policy is that Class AA waters "remain in their natural pristine state as nearly as possible with an absolute minimum of pollution or alteration of water quality from any human-caused source or actions." *Id.* § 11-54-3(c)(1).  Protected uses in the area include oceanographic research, the support and propagation of shellfish and other marine life, conservation of coral reefs and wilderness areas, and compatible recreation and aesthetic enjoyment.  *Id.*  Hawai'i Administrative Rules § 11-54-6(d)(3) contains numeric criteria specific to the Kona Coast, and establishes limits for a variety of pollutants including, but not limited to, nitrogen and phosphorus.

   38. Haw. Admin. R. § 11-54-4 contains narrative and numeric water quality criteria that apply to all waters, including the Honokōhau Boat Harbor and the adjacent marine areas.  The narrative criteria require that, among other things, "[a]ll waters shall be free of substances attributable to domestic, industrial, or other controllable sources of pollutants, including:  . . . (3) Substances in amounts sufficient to produce . . . objectionable color, turbidity, or other conditions in the receiving waters; (4) . . . [D]eleterious substances at levels or in combinations sufficient to be toxic or harmful to human, animal, plant, or aquatic life, or in amounts sufficient to interfere with any beneficial use of the water; [and] (5) Substances or conditions or combinations thereof in concentrations which produce undesirable aquatic life[.]" *Id.* § 11-54-4(a).

13

39. In addition to narrative and numeric criteria, "ocean discharge criteria" must be applied when establishing NPDES permit limits for discharges into the territorial sea or ocean, 33 U.S.C. § 1343(a), and permitting agencies must ensure that any discharges will not unreasonably degrade the marine environment, 40 C.F.R. § 125.123.

40. Hawai'i's anti-degradation regulations further require that, at a minimum, "[e]xisting uses and the level of water quality necessary to protect the existing uses shall be maintained and protected." Haw. Admin. R. § 11-54-1.1(a).

41. In Hawai'i, "[n]o person, including any public body, shall discharge any water pollutant into state waters, or cause or allow any water pollutant to enter state waters" except in compliance with the state's water pollution regulations. Haw. Rev. Stat. § 342D-50(a); *see also* Haw. Admin. R. § 11-55-03.

## BACKGROUND FACTS

A. <u>The Kealakehe Wastewater Treatment Plant Discharges Pollutants from Two Point Sources.</u>

42. Since 1993, the County has discharged wastewater from the Kealakehe WWTP, and it continues to do so.

43. A pipe under Queen Ka'ahumanu Highway carries wastewater treated at the Kealakehe WWTP to a natural, disposal pit located in a permeable lava field

upslope from the Honokōhau Boat Harbor. The pipe from the Kealakehe WWTP terminates in two separate pipes that discharge into the disposal pit.

44. The Kealakehe WWTP currently discharges about 1.7 million gallons of treated sewage per day into the disposal pit.

45. The Kealakehe WWTP receives wastewater generated by the North Kona Sewerage system, which extends across the greater Kailua-Kona region from just south of Kealakehe Parkway at its northern edge to Aliʻi Heights at the southern edge. The Hui is informed and believes, and on that basis alleges, that the volume of wastewater that the facility treats and discharges will increase over time as population and commercial growth occur in the area the facility services.

46. With no other way to dispose of the treated sewage generated by the North Kona Sewerage system, the Hui is informed and believes, and on that basis alleges, that the County will continue to discharge from the Kealakehe WWTP on an ongoing basis into the future.

B. <u>Treated Sewage Discharged from the Kealakehe WWTP Enters Waters of the United States Via Groundwater.</u>

47. The Hui is informed and believes, and on that basis alleges, that the Kealakehe WWTP discharges pollutants into the ocean via groundwater.

48. In a 2019 draft environmental impact statement for a proposed upgrade of the Kealakehe WWTP, Defendant acknowledged that the facility's treated sewage enters the ocean via groundwater.

49. Multiple, peer-reviewed studies have confirmed concentrated discharge of nutrient-laden groundwater into the Honokōhau Harbor and the adjacent Honokōhau Bay. These scientific investigations leave no doubt that the treated sewage from the Kealakehe WWTP that is discharged into the disposal pit flows with groundwater into the Pacific Ocean in and adjacent to Honokōhau Harbor.

50. The Pacific Ocean is a water of the United States. Honokōhau Harbor's ocean waters, which are part of the Pacific Ocean, are well within three miles from the coast and, thus, are within the territorial seas.

51. The Hui is informed and believes, and on that basis alleges, that the Kealakehe WWTP's treated sewage travels from the disposal pit via groundwater and ultimately enters Honokōhau Harbor's ocean waters in a matter of months, at most.

52. The Hui is further informed and believes, and on that basis alleges, that the treated sewage travels a distance of approximately 0.7 miles from the disposal pit to the Honokōhau Harbor.

C. <u>The County Discharges from the Kealakehe WWTP Without a Permit.</u>

53. The County does not have—and has never had—an NPDES permit for discharges from the Kealakehe WWTP to the Pacific Ocean.

## CLAIM FOR RELIEF

### (Defendant's Violations of the Clean Water Act by Discharging Treated Sewage Without an NPDES Permit)

54. The Hui realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 53 of this complaint.

55. Defendant has violated and is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging treated sewage from the Kealakehe WWTP's two discharge pipes into waters of the United States without an NPDES permit. Defendant is subject to civil penalties under CWA section 309(d), 33 U.S.C § 1319(d). *See* 40 C.F.R. § 19.4.

56. Defendant's CWA violations began prior to 2018 and will continue on an ongoing basis until Defendant obtains and complies with an NPDES permit for discharges from the Kealakehe WWTP. *See* 33 U.S.C. §§ 1311(a), 1342.

## PRAYER FOR RELIEF

WHEREFORE, the Hui respectfully requests that the Court:

1. Enter a declaratory judgment that Defendant has violated and is violating the CWA by discharging treated sewage from the Kealakehe WWTP's discharge pipes into waters of the United States without an NPDES permit;

2.	Issue a mandatory injunction that requires Defendant promptly to obtain and comply with the terms of a valid NPDES permit for discharges from the Kealakehe WWTP;

3.	Issue such additional injunctive relief as may be necessary to ensure that Defendant fully complies with the CWA and to avoid irreparable harm to the Hui and to Hawaiʻi Island's environment until such compliance occurs;

4.	Impose civil penalties for Defendant's illegal, unpermitted discharges from the Kealakehe WWTP pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

5.	Award the Hui the costs of this litigation, including reasonable attorney and expert witness fees, pursuant to CWA section 505(d), 33 U.S.C. § 1365(d);

6.	Retain continuing jurisdiction to ensure Defendant's compliance with all judgments and orders entered herein;

7.	Issue such additional judicial determinations and orders as may be necessary to effectuate the foregoing requests for relief; and

8.	Issue such other and further relief as the Court deems just and appropriate to effectuate a complete resolution of the legal disputes between the Hui and Defendant.

DATED: Honolulu, Hawaiʻi, September 25, 2023.

<u>/s/ Elena L. Bryant</u>
DAVID L. HENKIN
ELENA L. BRYANT
EARTHJUSTICE

Attorneys for Plaintiff Hui Mālama Honokōhau